UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GILBERT JIVIDEN,

        Petitioner,                                     Case Number 01-10114

v.                                                     Honorable David M. Lawson

PAT WARREN,

        Respondent.
_____/

## OPINION AND ORDER DENYING MOTION TO STAY AND HOLD PETITION IN ABEYANCE AND DENYING PETITION FOR WRIT OF HABEAS CORPUS

This habeas corpus proceeding returned to the Court after a hiatus of more than a decade, when the petitioner filed a motion to continue a stay of the proceedings granted by the Court more than 17 years ago, to allow him to return to the state courts to exhaust a new claim that was not raised in his original petition, which was filed on March 15, 2001. After reviewing the record of the proceedings and the petitioner's motion to continue the stay, the Court finds that no further delay of the proceedings is warranted, because the petitioner has not established that he has exhausted his state court remedies on his proposed new claim, or that he is in the process of doing so, and in any event the proposed new claim would be time barred even if the petitioner had (or has) made some attempt to present it to the state courts. Nevertheless, the Court finds that the issues raised in the original petition are fully briefed and ready for decision, and the Court therefore will dissolve the stay of proceedings and address the merits of those original claims.

I.

On January 15, 1998, after a jury trial in the Montmorency County, Michigan circuit court, petitioner Gilbert Jividen was convicted on seven counts of criminal sexual conduct in the first degree, Mich. Comp. Laws § 750.520b, which arose from various instances of sexual contact with

his adopted daughter that occurred between 1989 and 1996. On March 2, 1998, the petitioner was sentenced to seven concurrent terms of life in prison.

The petitioner did not request appointment of appellate counsel until January 7, 1999. On January 12, 1999, the State Appellate Defender Office was appointed to represent him, and a delayed application for leave to appeal was filed with the Michigan Court of Appeals on March 22, 1999. In his application for leave to appeal, Jividen raised three issues: (1) the trial court erred by overruling defense objections to the admission of other acts evidence under Michigan Rule of Evidence 404(b), and the petitioner was denied a fair trial when the trial court refused to instruct the jury as to the limited nature of the other acts testimony; (2) the trial court erred by overruling a defense objection to the admission of testimony by the petitioner's first wife that he had stated an intent to have sexual relations with their daughters, because the testimony was unrelated to the complainant, too far removed in time, and more prejudicial than probative; and (3) the concurrent life sentences imposed by the trial court were excessive and disproportionate in light of the petitioner's lack of any prior felony conviction record. On June 30, 1999, the court of appeals issued a summary order denying the delayed application for leave to appeal "for lack of merits in the grounds presented."

On August 25, 1999, the petitioner filed a delayed application for leave to appeal to the Michigan Supreme Court from the decision of the intermediate appellate court. On January 31, 2000, the application was denied by the state supreme court, in a summary order stating that the court was "not persuaded that the questions presented should be reviewed."

On March 15, 2001, the petitioner filed his original petition for a writ of habeas corpus in this Court. In his original petition, Jividen raised two claims for relief:

    I.    THE TRIAL COURT REVERSIBLY ERRED IN OVERRULING THE DEFENSE OBJECTIONS TO ADMISSION OF OTHER ACTS

>   EVIDENCE UNDER MRE 404(B), AND DEFENDANT WAS DENIED A FAIR TRIAL WHERE THE TRIAL COURT FAILED TO ACCURATELY INSTRUCT THE JURY AS TO THE LIMITED NATURE OF THE OTHER ACTS TESTIMONY. U.S. CONST. AM'S V, XIV; MICH CONST 1963, ART I, §§ 17, 20.
>
> II. THE TRIAL COURT ERRED IN OVERRULING A DEFENSE OBJECTION TO TESTIMONY FROM DEFENDANT'S FIRST WIFE THAT HE ALLEGEDLY STATED AN INTENT TO HAVE SEXUAL RELATIONS WITH THEIR DAUGHTERS, AS THIS TESTIMONY WAS UNRELATED TO THE COMPLAINANT IN THIS CASE, WAS TOO ATTENUATED BY THE PASSAGE OF TIME, AND WAS MORE PREJUDICIAL THAN PROBATIVE. U.S. CONST. AM'S V, XIV; MICH CONST 1963, ART I, §§ 17, 20.

Pet. at 1, 10.

When the case first was filed in 2001, the Court directed the initial respondent, Warden Paul Renico, to file a response to the petition and Rule 5 materials from the state proceeding. The respondent did so on August 13, 2001. The petitioner's place of confinement was changed at least twice during the pendency of this case, and the publicly available records of the Michigan Department of Corrections indicate that he presently resides at the Macomb County Correctional Facility, under the custody of Warden Pat Warren, who presently is the proper respondent in this matter. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) ("The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" (quoting 28 U.S.C. § 2242)).

On July 5, 2002, the Court granted the petitioner's motion to stay the proceedings and hold the petition in abeyance, so that he could return to the state courts to exhaust certain additional claims. However, in that order the Court instructed the petitioner that he would have to file a postconviction motion for relief from judgment in the state court "on or before August 5, 2002," R. 22 at 5, and that if he did not properly commence the collateral proceedings in state court by that date, then the Court would proceed to adjudicate the merits of the original petition.

The Court heard nothing further from the petitioner until June 14, 2014, when he returned with a motion to extend the stay of proceedings. In that motion, the petitioner conceded that he never filed any motion for relief from judgment in state court, and he certainly did not do so within the time allowed by the Court when it granted the stay in July 2002. He nevertheless asked that the Court continue the stay of proceedings and permit him eventually to amend his petition to add a new unexhausted claim asserting that the sentence imposed by the state trial court violated his rights under the Fifth and Sixth Amendments, relying on the Supreme Court's decision in *Alleyne v. United States*, 570 U.S. 99 (2013) (holding that "any fact that increases the mandatory minimum [sentence for a crime] is an 'element' that must be submitted to the jury [and found beyond a reasonable doubt]"). The petitioner asserted in his 2014 motion to extend the stay that he recently had filed a postconviction motion for relief from judgment in the state court raising the *Alleyne* claim. However, the Court has found nothing in the publicly available records of proceedings of the Michigan state courts to indicate that the petitioner pursued any such relief.

## II.

The Court will deny the petitioner's motion to continue the stay of proceedings, because even if the petitioner freshly presented his *Alleyne* claim to the state courts in 2014, he has not demonstrated presently that he properly exhausted his state court remedies on that claim or that he asserted the new claim within the one-year limitations period imposed under the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2244(d)(1). The Court finds, therefore, that no purpose would be served by delaying the adjudication of the petition further, merely to allow the petitioner to attempt to present a futile amendment based on an untimely claim.

The doctrine of exhaustion of state remedies requires state prisoners to "fairly present' their claims as federal constitutional issues in the state courts before raising those claims in a federal habeas corpus petition. *See* 28 U.S.C. § 2254(b)(1)(A), (c); *O'Sullivan v. Boerckel*, 526 U.S. 838,

844 (1999); *McMeans v. Brigano*, 228 F.3d 674, 680-81 (6th Cir. 2000); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). The exhaustion requirement is satisfied if a prisoner invokes one complete round of the state's established appellate review process, including a petition for discretionary review to a state supreme court. *See O'Sullivan*, 526 U.S. at 845, 847. A prisoner "'fairly presents' his claim to the state courts by citing a portion of the Constitution, federal decisions using constitutional analysis, or state decisions employing constitutional analysis in similar fact patterns." *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993); *see also Prather v. Rees*, 822 F.2d 1418, 1420 (6th Cir. 1987) ("Ordinarily, the state courts must have had the opportunity to pass on defendant's claims of constitutional violations"). A Michigan petitioner must present each ground to both Michigan appellate courts before seeking federal habeas corpus relief. *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Mohn v. Bock*, 208 F. Supp. 2d 796, 800 (E.D. Mich. 2002); *see also Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). The petitioner bears the burden of showing that her state court remedies have been exhausted. *Rust*, 17 F.3d at 160.

The Supreme Court has held that the filing of a federal habeas corpus petition does not suspend the running of the one-year limitations period under 28 U.S.C. § 2244(d)(2). *See Duncan v. Walker*, 533 U.S. 167, 181-82 (2001). However, the Supreme Court's decision in *Duncan* does not prevent district courts from "retain[ing] jurisdiction over a meritorious claim and stay[ing] proceedings pending the complete exhaustion of state remedies," or from "deeming the limitations period tolled for [a habeas] petition as a matter of equity." *Id.* at 182-83 (Stevens, J., concurring). The Supreme Court nonetheless has cautioned that a stay is "available only in limited circumstances," such as "when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court," the unexhausted claims are not

"plainly meritless," and the petitioner is not "engage[d] in abusive litigation tactics or intentional delay." *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005).

The petitioner asserted in his motion to continue the stay that he had filed a post-conviction motion in the state courts raising his *Alleyne* claim. However, he has not submitted any information to the Court suggesting that any proceedings on that claim were concluded, or, if he was unsuccessful in securing relief in the state trial court, that he fully pursued the claim through the Michigan appellate courts. Thus, the petitioner has not met his burden of showing that the proposed new claim has been exhausted, or that he is in the process of exhausting it.

Moreover, the Sixth Circuit has held that the rule announced in *Alleyne* does not apply retroactively to cases on collateral review. *United States v. Charles*, No. 18-5318, --- F.3d ---, 2018 WL 4016849, at *2 (6th Cir. Aug. 23, 2018) (citing *In re Mazzio*, 756 F.3d 487 (6th Cir. 2014) ("We now hold that *Alleyne* does not apply retroactively to cases on collateral review."); *Goode v. United States*, 305 F.3d 378, 383 (6th Cir. 2002) (holding that the rule of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), on which *Alleyne* was based, is not retroactive)). Therefore, Jividen was required to assert any federal claims based on the allegedly unlawful sentence at the latest within a year after his conviction and sentence became final on May 1, 2000. The original petition in this case was timely filed, but it did not include any claim raising a Fifth or Sixth Amendment challenge to the life sentences that Jividen received. Any contemplated claim challenging the sentence that was asserted in 2014 would be time barred since the applicable one-year limitations period for asserting any such claim had long ago expired by then.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") became effective on April 24, 1996 and governs the filing date for this action because the petitioner filed his petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA

amended 28 U.S.C. § 2244 to include a one-year period of limitations for habeas petitions brought by prisoners challenging state court judgments. *Vroman v. Brigano*, 346 F.3d 598, 601 (6th Cir. 2003). The one-year statute of limitations runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). A habeas petition filed outside the prescribed time period must be dismissed. *See Isham v. Randle*, 226 F.3d 691, 694-95 (6th Cir. 2000) (case filed 13 days after limitations period expired dismissed for failure to comply); *Wilson v. Birkett*, 192 F. Supp. 2d 763, 765 (E.D. Mich. 2002).

The Supreme Court denied the petitioner's delayed application for leave to appeal on January 31, 2000. That decision became final on April 30, 2000, when the time during which the petitioner could have filed a petition for a writ of *certiorari* in the United States Supreme Court expired. The one-year limitations period commenced on the following day, May 1, 2000. *See Bronaugh v. Ohio*, 235 F.3d 280, 284-85 (6th Cir. 2000) (holding that the last day on which a petitioner can file a petition for a writ of *certiorari* in the United States Supreme Court is not counted toward the one-year limitations period applicable to habeas corpus petitions). The petitioner therefore was required to assert his right to habeas relief no later than May 1, 2001. He filed his original petition raising two claims for relief within that time, but neither of those claims

addressed the allegedly improper sentence. The petitioner does not contend that he presented any claim of a constitutional defect in his sentence to this Court any time before June 2014, which was more than 13 years after the AEDPA limitations period expired. The petitioner has not suggested that any action by the State impeded him from raising a claim challenging his sentence, or that the claim is based on any newly discovered facts. The rule announced in *Alleyne* is not retroactive, so subsection 2244(d)(1)(C) cannot apply. The only benchmark under section 2244(d)(1) that could apply here is subsection (A), which marks the start of the limitations period as the date on which the judgment of sentence became final. Therefore, any claim first presented to this Court in 2014 attacking a sentence that became final on May 1, 2000 would be untimely.

III.

Nevertheless, although the petitioner's new claim would be tardy, and the petitioner has not shown any good grounds for delaying the proceedings while he attempts to exhaust any additional claims, the Court freshly has reviewed the original petition, the respondent's opposition, and the record of the state court proceedings, all of which timely were filed before the proceedings were stayed in July 2002. Having done so, the Court now finds that the petitioner has not shown that his convictions violated any clearly established federal law or that the state courts misapplied controlling precedent. Therefore, the Court will deny the petition.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). Because Jividen filed his petition after the AEDPA's effective date, its standard of review applies. Under that statute, if a claim was adjudicated on the merits in state court, a federal court may grant relief only if the state court's

adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 420 (2014) (internal quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. The AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached" (internal quotation marks and citations omitted)); *see also Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 841 (6th Cir. 2017); *Dewald v. Wriggelsworth*, 748 F.3d 295, 298-99 (6th Cir. 2014); *Bray v. Andrews*, 640 F.3d 731, 737-39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205

(6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (*en banc*). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

Even though the state appellate courts did not give full consideration to the federal issues raised in the petitioner's delayed applications for leave to appeal, AEDPA's highly deferential standard for reviewing a habeas petitioner's constitutional claims applies here. The petitioner must show that "the state court decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law' or involved an 'unreasonable determination of the facts.'" *Kelly v. Lazaroff*, 846 F.3d 819, 831 (6th Cir. 2017) (quoting 28 U.S.C. § 2254(d)). That standard applies "even when a state court does not explain the reasoning behind its denial of relief." *Carter v. Mitchell*, 829 F.3d 455, 468 (6th Cir. 2016). "Under [*Harrington v. Richter*, 562 U.S. 86 (2011)], '[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on its merits in the absence of any indication or state-law procedural principles to the contrary.'" *Barton v. Warden, S. Ohio Corr. Facility*, 786 F.3d 450, 460 (6th Cir. 2015) (quoting Harrington, 562 U.S. at 99). There is nothing in this record that suggests a basis for rebutting that presumption. *See Johnson v. Williams*, 568 U.S. 289, 133 S. Ct. 1088, 1097 (2013).

A. First Claim

In his first claim, the petitioner argues that the trial court erred by admitting, over his objections, evidence of other incidents of sexual contact between the petitioner and the victim that occurred outside the time period of the contacts for which the petitioner formally was charged, as well as testimony about his mental and physical abuse of her. The state court issued a pretrial ruling that the evidence would be admissible at trial, subject to a limiting instruction. The petitioner asserts that testimony was received at trial about his other sexual contacts with the victim

on various dates, his "mental and physical abuse" of her, and several times when he "physically assaulted" her. The petitioner contends, without elaboration, that this evidence violated his due process right to a fair trial, contrary to the Fourteenth Amendment. However, the only substantive arguments that he makes in his petition concern various purported misapplications of state evidentiary rules and case law that govern the admission of other acts testimony. *E.g.*, Mich. R. Evid. 404(b), 403; *People v. Crawford*, 458 Mich. 376, 582 N.W.2d 785 (1998).

The claim that the trial court misapplied the state rules of evidence is not cognizable on habeas review, and the petitioner has not cited any federal decisions in support of his undeveloped argument that admission of the other acts evidence violated his due process right to a fair trial. Instead, he cites federal decisions holding generally that the exclusion of evidence about the circumstances of a confession or the wholesale admission of voluminous evidence unrelated to anything that the defendant did may render a trial fundamentally unfair. *E.g.*, *Crane v. Kentucky*, 476 U.S. 683 (1986); *Walker v. Engle*, 703 F.2d 959, 968 (6th Cir. 1983). But he does not explain how those decisions comprised clearly established federal law that barred the admission of the other acts testimony in his case. The only substantive arguments that he advances regarding admission of the evidence are premised on alleged errors in the application of state rules of evidence and state court evidentiary case law. But errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). "Trial court errors in state procedure or evidentiary law do not rise to the level of federal constitutional claims

warranting relief in a habeas action, unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *Estelle*, 502 U.S. at 69-70); *see also Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (citing *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007)); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512.

The petitioner also contends that limiting instructions that were given regarding other acts testimony were improper because the trial court "basically told the jury the evidence of uncharged behavior was admissible to help them judge the credibility of the allegations supporting the charged offenses," Pet. at 7, but it failed to distinguish between the purposes for which the evidence of other sexual contacts could be considered versus the testimony about non-sexual conduct such as mental or physical abuse. With respect to other uncharged incidents of sexual contact with the victim, the trial court gave the jury the following instruction on the use of that testimony when it issued its final charge before their deliberations:

> You've heard evidence that was introduced to show that the Defendant engaged in improper sexual conduct for which the Defendant is not on trial. If you believe this evidence you must be very careful to consider it for only one limited purpose, that is to help you judge the believability of the testimony concerning the acts for which the Defendant is on trial. You must not consider the evidence for any other purpose. For example, you must not decide that it shows that the defendant is a bad person, or that the Defendant is likely to commit crimes. You must not convict the Defendant because you think he's guilty of other bad conduct.

Trial Tr. Vol. III at 503. Earlier in the proceedings, the trial court gave a more expansive instruction concerning testimony about the petitioner's mental and physical abuse of the victim, after overruling several defense objections based on relevance and probative value of that

evidence. Trial Tr. Vol. II at 292, 293, 295-96, 299. The trial court instructed the jury as follows just after the testimony about physical and mental abuse was received:

> Testimony is sometimes allowed for a limited purpose. Testimony about acts other than those for which the Defendant is charged and on trial sometimes is admitted, admissible, [sic] sometimes it's not admissible in evidence. You shouldn't consider testimony about other acts other than the acts for which he is charged for any purpose except as you think it might bear on the credibility of the witnesses when they're testifying about the incidents that are charged. He's not charged with hitting her, the incident on the night of the prom. He's not charged with using abusive language toward her.
>
> You've heard evidence that was introduced to show the Defendant has engaged in improper sexual conduct for which the Defendant is not on trial. You've also heard evidence to show the Defendant has engaged in other acts for which he's not on trial. Using abusive language is one, and I already mentioned the other one. If you believe this evidence you must be very careful to consider it for only one limited purpose; that is to help you judge the believability of testimony regarding the facts for which the Defendant is now on trial. You should not consider this evidence for any other purpose. For example, you must not decide that it shows the Defendant is a bad person or that the Defendant is likely to commit crimes. You must not convict the defendant here because you think he is guilty of other bad conduct.
>
> It's going to be the argument of the People in this case, or the Prosecuting Attorney, that the element — one of the elements of the offense, or more than one, but not all of the offenses involved, is that Defendant used force or coercion, and the argument is going to be that the force or coercion in this case amounts to these acts and the fear on the part of the alleged victim to resist or to do anything in opposition to these acts. And so far as that's concerned, this testimony may be relevant. How relevant it is is completely up to you to decide, not me.

Trial Tr. Vol. II at 299-301. The petitioner does not identify any occasion when his counsel requested a different or more specific limiting instruction discriminating between other acts that involved sexual contact as compared with physical or mental abuse of the victim, and no contemporaneous objection to the instructions that were given is evident in the record.

Contrary to the petitioner's argument, the instruction that was given by the trial court contemporaneously with the testimony about physical and mental abuse did explicitly call out those acts and distinguish them from evidence about other uncharged incidents of sexual contact. The trial court instructed the jury (1) that they could consider the testimony about physical and

mental abuse as potentially relevant when deciding whether the petitioner used "force or coercion" to intimidate the victim into engaging in sexual activity, (2) that they should not consider the testimony for any other purpose than determining the credibility of the testimony about the charged acts, and (3) that they "must not convict the defendant here because you think he is guilty of other bad conduct." Thus, the instructions that were given by the trial court did distinguish between the proper purposes for which the evidence of the different categories of other acts could be considered, and the trial court instructed the jury with respect to all of the categories of acts that the evidence should not be used for any other purpose, such as deciding to convict the petitioner based on a belief that he was guilty of other, uncharged misconduct.

Nevertheless, even if, as the petitioner contends, the trial court had omitted any instruction regarding the use of testimony about physical or mental abuse, the petitioner has not pointed to any clearly established federal law holding that the failure to give a limiting instruction specifically concerning those acts constituted a due process violation. An erroneous jury instruction warrants habeas corpus relief only where the instruction "'so infected the entire trial that the resulting conviction violates due process.'" *Estelle*, 502 U.S. at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). The challenged jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Ibid.* (quoting *Cupp*, 414 U.S. at 147). The Court must "inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Ibid.* (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990)).

The petitioner criticizes the jury instruction in this case not because of what the court said, but because of what it omitted. However, the Sixth Circuit has held that omission of a crucial instruction — even as noteworthy as leaving out an element of a charged offense — "does not

necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Patterson v. Haskins*, 316 F.3d 596, 609 (6th Cir. 2003) (quoting *Neder v. United States*, 527 U.S. 1, 9 (1999)). "The Supreme Court has made clear that 'not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation.'" *Wade v. Timmerman-Cooper*, 785 F.3d 1059, 1078 (6th Cir. 2015) (quoting *Middleton v. McNeil*, 541 U.S. 433, 437 (2004)). Moreover, "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). Here, even if the trial court had failed to give any adequate limiting instruction on the testimony about physical and mental abuse, that error would not warrant habeas relief, because the petitioner has not cited any clearly established federal law holding that the mere omission of such a limiting instruction always renders a trial fundamentally unfair. As the Ninth Circuit has explained, "[i]n *Estelle*, the Court noted that, *in that case*, a limiting instruction prevented the jury from using prior bad acts evidence for an improper purpose," but "[t]he Court in no wise held that a limiting instruction is always necessary to protect a defendant's due process rights." *Basurto v. Luna*, 291 F. App'x 41, 43 (9th Cir. 2008) (citation omitted).

Moreover, the petitioner has not pointed to any circumstances to show how the purported omission of a more explicit other-acts instruction rendered his trial fundamentally unfair. The testimony by the petitioner's ex-wife and the victim's sister discussing mental and physical abuse of the victim by the petitioner comprised less than an hour, in a trial that ran for three days. Trial Tr. Vol. II at 287-330. The trial court told the jury that it could consider other acts of mental and physical abuse when deciding whether the petitioner used "force" or "coercion" to compel the victim to engage in sex acts with him. But there was ample other direct testimony in the record on that point. The victim testified that on numerous occasions the petitioner "threatened," "hurt,"

"hit," or "thr[ew] things" at her in order to make her comply with his demands for sexual contact. *E.g.*, Trial Tr. Vol. I at 225 ("He threatened to make me work, um, isolate me from my friends, keep me home from school."); *id.* at 226 ("Q: Did you believe he would hurt you? A: Yes."); *ibid.* ("[B]efore he started throwing things at me, I was like, fine, whatever." (referring to an occasion when the petitioner video taped himself and the petitioner having sex)); *id.* at 227 ("Q: And during your high school years did he ever hit you? A: Yes, he did."). In light of that other evidence supporting the element of force or coercion in the charged offenses, there was no due process violation from the omission of any more particular limiting instruction. *Wade*, 785 F.3d at 1079 ("[G]iven the presence of the other evidence of force, we cannot conclude that the trial court's failure to instruct the jury to restrict its view of the firearm evidence rises to the level of a constitutional-due-process violation. . . . Furthermore, our decision comports with recent holdings by the Supreme Court and this court establishing that a defense counsel's failure to request — or a trial court's failure to give — even an appropriate limiting instruction will not require reversal where other evidence in the record supports conviction.").

In his reply brief, the petitioner principally cites *Washington v. Hofbauer*, 228 F.3d 689 (6th Cir. 2000), where the Sixth Circuit reversed the denial of relief on habeas claims that involved improperly admitted character evidence. But that case is distinguishable because there the court of appeals concluded that the prosecutor committed "severe" misconduct by repeatedly urging the jury to consider testimony about other acts as evidence of the petitioner's bad character and propensity to commit crimes, and the petitioner's trial counsel was ineffective by failing to raise any objection or to request any limiting instruction regarding the other acts evidence. As the court of appeals explained in *Washington*, the egregious misuse of the character evidence there pervaded the State's presentation and it's closing argument:

> The prosecutor's animated recitation of this character evidence during closing arguments was plainly improper. In his initial summation, the prosecutor improperly implied that the jurors should consider Washington's unseemly character when rendering their verdict; in his rebuttal, he explicitly urged them to do so. Meanwhile, he attacked Washington as a "self-serving, illogical selfish non-compassionate, no emotional interest in a family type of person," who acted irrational due to "drugs and alcoholism and a general not caring about other people." The crime, he implored to the jury, "[s]ure fits him." The prosecutor thus articulated perhaps the paradigm of the improper "bad character" argument — that the alleged criminal acts "fit" the evidence of Washington's character and lifestyle. Because this character attack pervaded the closing argument and rebuttal, we find that the prosecutor's misconduct was severe.

*Id.* at 699-700 (citations omitted). In this case, the petitioner has not pointed to any such egregious or pervasive misuse of the other acts evidence, and the decision in *Washington* does not support his unadorned claim that the mere presentation of evidence about other acts rendered his trial fundamentally unfair, particularly where it was accompanied by limiting instructions both contemporaneously and in the trial court's final charge to the jury.

The petitioner is not entitled to habeas relief on his first claim.

## B. Second Claim

In his second claim, the petitioner argues that the trial court erred by admitting, over objections, testimony by his first wife that in 1978 the petitioner "stated an intent to have sexual relations with the two daughters born of that marriage once they reached the age of 12." Pet. at 10. The petitioner contends that the admission of that testimony violated his due process right to a fair trial under the Fourteenth Amendment because (1) the evidence was not admissible under Michigan Rule of Evidence 404(b)(1), since it concerned conduct too remote in time to have any significant probative weight, and it concerned acts that were entirely unrelated to the charges in the 1998 case, (2) the prejudicial impact of the testimony far outweighed any minimal probative value that it could have had, and it therefore should have been excluded under Michigan Rule of Evidence 403, and (3) the trial court's reliance on *People v. Vasher*, 449 Mich. 494, 537 N.W.2d

168 (1995), as authority for admitting the evidence was misplaced, because the circumstances of the *Vasher* case readily were distinguishable where the testimony at the petitioner's trial did not include any statements about a "general philosophy or plan to have sexual relations with persons other than [the daughters]." Pet. at 11. The petitioner raised this issue on direct appeal, and he repeats the same arguments here that he raised in the state courts, based entirely on state evidence law. He contends that the admission of his ex-wife's testimony "is an error of 'fundamental magnitude' and worked to deny [the petitioner's] due process right to a fair trial," Pet. at 14, but he does not offer any developed argument to explain how that is so. For the same reasons discussed above with respect to the other acts testimony that was challenged in the first claim, the petitioner is not entitled to habeas relief based on the evidentiary errors alleged in his second claim. *Estelle*, 502 U.S. at 67-68; *Serra*, 4 F.3d at 1354.

IV.

The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts, and the petitioner therefore has not established that he presently is in custody in violation of the Constitution or laws of the United States. He also has not shown good cause to extend the stay of proceedings, because he has not established that he properly exhausted his state court remedies on his new claim, and in any event the proposed new claim that he seeks to add would be time barred.

Accordingly, it is **ORDERED** that the petitioner's motion to continue the stay of proceedings and for leave to file an amended petition [R. 23] is **DENIED**.

It is further **ORDERED** that the stay of proceedings issue on July 5, 2002 is **DISSOLVED**, and the Clerk of Court shall reopen the case and restore it to the active docket.

It is further **ORDERED** that the petition for a writ of habeas corpus [R. 1] is **DENIED**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Date: September 24, 2018

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 24, 2018.

s/Susan K. Pinkowski  
SUSAN K. PINKOWSKI